## *In re* AUBREY and another.[1]

### (*Circuit Court, E. D. Louisiana.*  December 30, 1885.)

1. BRITISH MERCHANT SHIPPING ACTS.
   The acts of parliament known as the "British Merchant Shipping Acts" only include or embrace the statute law relating to British merchant ships and seamen, and the common law of Great Britain, except when altered by statute, remains still in force for the government of consuls.

2. JURISDICTION OF BRITISH CONSULS.
   When a British consul, in a matter of discipline, is dealing with British subjects, on board of a British ship, courts of the United States are not called upon to look for his jurisdiction further than the instructions issued by the British foreign office.

3. REV. ST. § 728.
   Section 728 of the Revised Statutes in terms embraces all consular agents whose governments give them jurisdiction, but the authority conferred upon such consular agents to sit as judge or arbitrator, mentioned in the statute, refers to, and is limited to, authority conferred by the United States. And construing section 728 with sections 4079, 4080, and 4081 of the Revised Statutes, such authority is limited to such officers of foreign nations as are entitled thereto, under treaty stipulation with the United States; and then only when such foreign country gives the same privileges to consular officers of the United States, the latter fact to be ascertained and proclaimed by the president.

4. RIGHTS OF CONSULAR OFFICERS TO SIT AS JUDGES OR ARBITRATORS.
   Neither under international law, nor under the statute law of the United States, has a consular officer of a foreign government a right to sit as judge or arbitrator within our territory, and render decrees or orders affecting personal liberty, which orders or decrees the courts of the United States are authorized or required to enforce, unless the consent of the United States to such jurisdiction has been given, either by express statute or treaty stipulation.

5. COMITY AND RECIPROCITY.
   Comity and reciprocity to be extended to representatives of foreign governments depends upon congress, and is not lodged within the judiciary. See 2 Op. Attys. Gen. 378, citing *The Nereide,* 9 Cranch. 389.

On Application for a Writ of *Habeas Corpus*.

*James McConnell* and *Richard De Gray*, for relators.

*A. de G. de Fonblanque*, British Consul, and *E. T. Florence*, for respondents.

PARDEE, J.    The relators are held by the keeper of the parish prison under a commitment from one of the commissioners of this court, purporting to be in compliance with section 728, Rev. St., and based

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

on a petition of her Britannic majesty's consul, alleging that by virtue of the authority conferred upon him by law as such consul, to sit as judge in a controversy between a seaman of the crew of a British ship and the captain and others of the crew thereof, he has made a decree that one John W. Dakin, Frank Aubrey, and Alfred G. Bardo, all of the British ship Lancefield, be sent to the United Kingdom for trial for an offense committed in the said United Kingdom, and which cannot be tried by any court of the United States or of the state of Louisiana; and concluding with a prayer that the aforesaid Dakin, Aubrey, and Bardo may be imprisoned in the prison of this parish, and held there until the aforesaid decree can be put in force, as is provided by section 728 of the Revised Statutes.

It is made to appear on the argument that the alleged offense was assault and battery committed on board a British ship in the port of Cardiff. It is probable that the commitment, and the petition on which it is based, are technically defective, the petition particularly, in not being more specific, but as new process could be at once issued, and the parties rearrested, and as the argument has been over the merits of the case as though the commitment and petition were complete, we will consider the case on its entire merits.

The relators' counsel contend that whether the offense alleged against relators was committed in or out of the United Kingdom, on the high seas or in port, the decree rendered by the consul was not made or rendered by him by virtue of an authority conferred on him by British law as such consul, to sit as judge or arbitrator in such differences as arise between captains and crews of British vessels, and they rely upon the British shipping acts.

In passing upon the question, it is immaterial to consider whether the naval court provided for by the British shipping act was the proper tribunal to try the relators for their alleged offense; whether extradition could have been resorted to, or whether the alleged consular action was proper and discreet, under the real facts in the case. The offenses within consular jurisdiction, under the British merchant shipping acts, are offenses committed out of the United Kingdom. But it appears that the said acts only include or embrace the statute law relating to British merchant ships and seamen, and that the common law of Great Britain, except when altered by statute, remains still in force for the government of consuls. See paragraph 1, Book of Instructions, *infra.* The consular jurisdiction in relation to the offenders against British law on board British ships, under both statute law and common law, has been proved in this case by the evidence of the consul, himself an English barrister at law, to be as found in a book entitled "Instructions to Consuls Relating to Matters Affecting the British Mercantile Marine," prepared by the board of trade, and approved by H. M., secretary of state for foreign affairs of date 1883. Paragraph 189 of said instructions reads as follows:

v.26F.no.11—54

"Upon a complaint being made to the consul of any offense against British law having been committed on the high seas, or if, without complaint, he becomes aware of any serious offense having been committed on board of a British ship, he may inquire into the case upon oath, and may summon witnesses before him for that purpose, and if there is evidence which, in the opinion of the consul, is sufficient to substantiate the charge, he may send the offender to some place in the British dominion at which he can be tried," etc.

The high authority issuing and indorsing the said book of instructions should remove any doubt as to whether it is in accordance with British law. See *Dainese* v. *Hale*, 91 U. S. 13; and, under the paragraph cited, the jurisdiction of the consul in the case in hand seems to be clear. At all events, when the British consul in a matter of discipline, is dealing with British subjects on board of a British ship, we are not called upon to look for his jurisdiction further than the instructions issued by the British foreign office.

Conceding, therefore, the jurisdiction of the consul under British law, it remains to determine whether section 728, Rev. St., warrants the commitment issued by the commissioner in the present case. The statute was originally passed to enable our government to carry out its treaty stipulations with Prussia and other countries. See 9 St. at Large, 78. In the revision of the statutes the preamble is omitted, and the application of the statute seems to be enlarged so as to embrace the consular agents of all nations; and it does embrace all consular agents whose governments give them jurisdiction, unless the statute is so construed as to hold that the authority conferred upon such consular agents to sit as judge or arbitrator, etc., mentioned in the statute, refers to and is limited to authority conferred by the consent of the United States. Such a construction is strengthened by the original preamble to the statute, and by the fact that sections 4079, 4080, 4081, Rev. St., (which precisely provide, under limitations and restrictions looking to the protection of citizens of the United States, for enforcing the judgments, orders, and decrees of consular officers,) are limited, in terms, to such officers of foreign nations as are entitled thereto, under treaty stipulation with the United States, and then only when such foreign country gives the same privilege, to consular officers of the United States, the latter fact to be ascertained and proclaimed by the president. Unless such claimed construction shall be given as to the authority necessary under section 728, it would render sections 4079, 4080, and 4081 practically nugatory, because section 728 in itself is so broad that all action in enforcing decrees of consular officers could be had thereunder, and the restrictions and limitations provided for in other sections of the statute avoided, and besides, foreign nations with whom we have no treaty stipulations would stand on as good, if not on a better, footing than those nations to which the United States is bound by treaties of reciprocity and commerce. The rule that the several sections of the statutes should be construed together, and harmonized, if possi-

ble, also leads to the suggested construction of section 728, and we are inclined to adopt it in this case.

The facts of this case, however, as they are admitted, suggest a doubt whether either or any of the sections of the statute referred to authorize the action of the commissioner, and justify the commitment issued by him. The case, as submitted, does not show any difference between the captain and the crew of any vessel, although it is alleged as the source of the consul's jurisdiction; but rather, it shows that the relators are charged with an offense against the laws of Great Britain committed in the United Kingdom; and this goes still further to show that the construction claimed for section 728 is too broad, because under such construction, in some cases, it may be made a substitute for our extradition laws, and permit the extradition of alleged fugitives from justice without the performance of such conditions as congress has seen fit generally to guard that important matter. See section 5270, Rev. St. *et seq.*

As a matter of law, foreign consuls have no jurisdiction within the territory of the United States except by force of treaty stipulations. See Wheat. Int. Law, 217. The judicial power of a consul depends upon the treaties between the nations concerned and the laws of the nation the consul represents. *Dainese* v. *Hale*, 91 U. S. 13. See *The Elwine Kreplin*, 9 Blatchf. 438. Consular jurisdiction depends on the general law of nations, subsisting treaties between the two governments affected by it, and upon the obligatory force and activity of the rule of reciprocity. 2 Op. Atty. Gen. 378.

We conclude, therefore, that neither under international law, nor under the statute law of the United States, has a consular officer of a foreign government a right to sit as judge or arbitrator within our territory, and render decrees or orders affecting personal liberty, which orders or decrees the courts of the United States are authorized or required to enforce, unless the consent of the United States to such jurisdiction has been given, either by express statute or treaty stipulation.

So far as the claim is made that the relators should be held in a spirit of comity and reciprocity, we can only say that the comity and reciprocity to be extended to representatives of foreign governments depends upon congress, and is not lodged within the judiciary. See 2 Op. Atty. Gen. 378, citing *The Nereide*, 9 Cranch, 389.

The writ of *habeas corpus* should be made absolute, and the relators discharged, and it is so ordered.

After the reading of the decision, Mr. Florence, representing the British consul, asked the court to detain the prisoners for a brief period until he could consult the consul as to whether an appeal would be taken. The request was granted, but no one appearing within a reasonable time, the men were set at liberty.

BOARMAN, J., concurs.